31 So.2d 85

### Ex parte MONTGOMERY.

#### 6 Div. 546.

Supreme Court of Alabama.

May 29, 1947.

Rehearing Denied June 30, 1947.

Wm. Conway, of Birmingham, for petitioner.

Harold M. Cook, of Birmingham, for Board of Commissioners.

LIVINGSTON, Justice.

Petition for review of the decision of the Board of Commissioners of the Alabama State Bar in denying the petition of Robert Morel Montgomery for reinstatement to practice as an attorney before the Bar of Alabama.

On June 5, 1942, petitioner was suspended from the practice of law by the Board

of Commissioners of the State Bar for a period of two years: the decree of suspension further providing for the automatic reinstatement of petitioner to the practice of law upon the expiration of said two years.

From the decree of suspension the petitioner appealed to this Court. On February 25, 1943, we materially modified the decree of the Board of Commissioners. The period of suspension was fixed at three years, and during that time petitioner was not to be heard on application for reinstatement, and he should not then be automatically reinstated, but his suspension should continue thereafter subject to his right to petition for reinstatement under section C of the rules of the Board of Commissioners (239 Ala. XXIX). See section 25, title 46, Code of 1940. And, as thus modified, the decree of the Board of Commissioners was affirmed. Ex parte Montgomery, 244 Ala. 91, 12 So.2d 314.

Section C, supra, provides:

"Any person who has been suspended, disbarred, or otherwise excluded from the practice of law, may thereafter file with the Secretary six copies of a sworn petition for reinstatement addressed to the Board. The Secretary shall send a copy thereof to each member of the Grievance Committee and shall retain one copy in his office. The Grievance Committee is empowered to make such investigation and require the production before it of such facts, data and proof as it may deem essential to enable it to determine whether it should or should not recommend the granting of such petition. The recommendation of such committee shall be filed with the Secretary. After the recommendation of such Committee, the Board shall, in executive session at which no person not a member of the Board is present, consider the said petition, together with the recommendation of the Grievance Committee, and any affidavits or other proof that may be offered in support of such petition. The decision of the Board shall be expressed by resolution entered upon its record. A copy of such resolution shall be kept in the Secretary's office, and a copy shall be mailed by the Secretary to the petitioner, and a copy to the Judge or Judges of the Judicial Circuit in which the petitioner resides to be spread upon the minutes of the Circuit Court in the County of petitioner's residence and a copy to the Clerk of each Federal District Court in Alabama, the Clerk of the United States Circuit Court of Appeals for the 5th Circuit and to the Clerk of the United States Supreme Court.

"A petition for reinstatement having been denied, no more than one additional petition from such person may be received, filed, or considered. Provided, that from the decision of the Board of Commissioners the petitioner shall be entitled to an appeal to the Supreme Court of Alabama as provided by Rule No. 28 of Section B."

■ An application for reinstatement of a disbarred or suspended attorney has been likened to an application for admission to practice, and a prerequisite to admission is a good moral character. Ex parte Stephenson, 243 Ala. 342, 10 So.2d 1, 143 A.L.R. 166; Ex parte Thompson, 228 Ala. 113, 152 So. 229.

"The decisive question of such an application is whether the applicant is of good moral character in the sense in which that phrase is used when applied to attorneys at law, and is a fit and proper person to be entrusted with the privileges of the office of an attorney." Ex parte Stephenson, supra [243 Ala. 342, 10 So.2d 4]; 6 Corpus Juris page 615, § 97, 7 C.J.S., Attorney and Client, § 41.

■■ The burden is on the applicant for reinstatement to satisfy the Board of Commissioners that he possesses such good moral character. The Board's finding in that regard is subject to review by this Court. To meet the burden thus cast, petitioner testified before the grievance committee of the State Bar. He offered in evidence affidavits signed by all the Circuit Judges of the Tenth Judicial Circuit, and approximately a hundred signed by members of the Bar practicing in that judicial circuit, and in which circuit petitioner had his residence and office, and did most of his practice before his suspension. Petitioner offered in evidence his honorable discharge from the military services of the United States, which is dated May 31, 1945, revealing some two years' service.

The respresentative of the Board of Commissioners introduced in evidence a complete transcript of the proceedings resulting in petitioner's suspension, and nothing more.

The affidavits signed by the Judges of the Tenth Judicial Circuit, and some of those of the attorneys do not contain a recommendation that petitioner be reinstated to the practice of law. They do state, however, that so far as affiants are aware petitioner has not practiced or attempted to practice law since his suspension became effective, and that they do not know nor have they heard of any misconduct on the part of petitioner since his suspension. Many other affidavits signed by members of the Bar in good standing do unequivocally recommend petitioner's reinstatement.

Adverse inferences are suggested because of the lack of affidavits or other evidence from business associates, and those with whom petitioner had business dealings during his suspension. But we think a fair explanation is found in his military service, and petitioner's testimony showing his business activities upon his return therefrom.

It could be that the Board of Commissioners in rejecting petitioner's application for reinstatement had in mind the Court's action in increasing the suspension fixed by the Board in the first instance, and perhaps thought the responsibility for lifting it should be assumed here.

Our decree affirming the suspension and increasing the time limit thereof also held open the door of hope to petitioner, affording an incentive to make a comeback and prove himself worthy to again become a member of the legal profession.

Petitioner has now been under suspension for more than four years: more than a year longer than the time limit in which he could apply for reinstatement. He has faithfully served his Country in time of great peril. Many members of the Bar of this State recommend his reinstatement. Recognizing fully petitioner's responsibility to clearly establish his right to reinstatement, we are unwilling to say that his petition is without merit. This is espe-cially true when there is nothing before us to the contrary, other than the record on which he was suspended. No evidence was introduced tending to prove that petitioner has violated in any manner the mandates of the suspension.

Fully conscious of our duty to the Bench and Bar, and to the public generally, and of our duty to study carefully every application for reinstatement, it is likewise our duty to acknowledge the possibility that every wrongdoer may reform, and to allow reinstatement in every case in which a genuine reformation is shown, yielding some consideration to petitions for reinstatements purely from the standpoint of the petitioner, but viewing them more broadly from the standpoint or the rights and needs of the public which deserve an adequate protection from dishonest lawyers. Our duty goes no further. We forego additional discussion.

We believe that the ends of justice will be served by reinstatement petitioner to the practice of law. It is so ordered.

Application granted: Petitioner reinstated.

All the Justices concur.